## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

_____

| | |
|---|---|
| United States of America, | ) |
| | ) No. **15-8378MJ** |
|       Plaintiff, | ) |
| | ) |
|       vs. | ) Phoenix, Arizona |
| | ) September 1, 2015 |
| **Ahmed Mohammed El Gammal,** | ) |
| | ) |
|       Defendant. | ) |
| _____ | ) |

### BEFORE:  THE HONORABLE BRIDGET S. BADE, MAGISTRATE JUDGE

### <u>TRANSCRIPT OF PROCEEDINGS</u>

### <u>DETENTION HEARING</u>

**APPEARANCES:**
For the Plaintiff:
    U.S. Attorney's Office
    By:  **Melissa Karlen**, Esq.
        **David Pimsner**, Esq.
    40 North Central Avenue, Suite 1200
    Phoenix, Arizona 85004

For the Defendant:
    Mitchell Stein & Carey
    By:  **Michael T. Morrissey**, Esq.
    2 North Central Avenue, Suite 1900
    Phoenix, Arizona 85004

Transcriptionist:
Candy L. Potter
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 36
Phoenix, Arizona 85003-2151
(602) 322-7246

Proceedings Recorded by Electronic Sound Recording
Transcript Produced by Transcriptionist

**15-8378MJ — September 1, 2015**

1              THE CLERK:  On the record in 15—MJ—8378, U.S.A. versus

2      Ahmed Mohammed El Gammal, before the Court for a continuation

3      of detention hearing.

4              Counsel, please state your appearances.

5              MS. KARLEN:  Good morning, Your Honor, Melissa Karlen

6      as well as David Pimsner on behalf of the United States.  Here

7      present at counsel table as well is Special Agent Jeffrey

8      Hebert with the Federal Bureau of Investigation.

9              THE COURT:  Good morning.

10             MR. PIMSNER:  Good morning, Your Honor.

11             MR. MORRISSEY:  Good morning, Your Honor, Michael

12     Morrissey on behalf of Mr. El Gammal, who is present.

13             THE COURT:  Good morning, Mr. Morrissey.

14             And good morning, Mr. El Gammal.

15             We are continuing the detention hearing which started

16     last week.  At the conclusion of that hearing I requested that

17     Pretrial Services conduct an investigation to determine whether

18     Mr. El Gammal's former mother—in—law would be an appropriate

19     third—party custodian, whether her residence would be an

20     appropriate place for him to reside, and whether the residence

21     would be suitable for active GPS location monitoring.

22             Mr. Lara is here.  He's also provided a supplemental

23     report.

24             Counsel, did you receive the supplemental report?

25             MS. KARLEN:  Yes, Your Honor.

─ **15-8378MJ − September 1, 2015** ─

1    MR. MORRISSEY:  Yes, Your Honor.

2    THE COURT:  So you know that Pretrial Services is now

3 recommending that Mr. El Gammal be detained.  They found that

4 the residence was appropriate for location monitoring, but was

5 not an appropriate residence at which he could reside.  It

6 appeared they were concluding that his former mother-in-law

7 would be appropriate as a custodian, but not at that residence.

8    I've received a notebook from the Government with what

9 appear to be translations of e-mails and Facebook posts.  I had

10 directed Miss Scheel at last week's hearing to produce that to

11 Mr. Morrissey before today's hearing.

12    Miss Karlen, were those e-mails and Facebook posts

13 produced to defense counsel?

14    MS. KARLEN:  Yes, Your Honor.

15    THE COURT:  And, Mr. Morrissey, I also have some

16 exhibits that were here on the bench for me this morning that

17 you've submitted, which could have been an e-mail or --

18    MR. MORRISSEY:  Yes, Your Honor.  It's a single

19 exhibit and it's a series of e-mails.

20    THE COURT:  All right.  The font is very small.

21    MR. MORRISSEY:  It is.

22    Your Honor, the exhibits go to whether or not

23 Mr. El Gammal had any present intention to leave Arizona.  And

24 I believe what you'll see is that he was negotiating for a new

25 place to live, was approved for a new place to live, and was

**———— 15-8378MJ – September 1, 2015 ————**

1   providing -- in the process of providing financial payment for

2   his new place to live.

3           THE COURT:  All right.  So these three e-mails are

4   addressed to locating a new residence; is that correct?

5           MR. MORRISSEY:  Yes.

6           THE COURT:  All right.  Thank you.

7           All right.  Miss Karlen, is there anything the

8   Government would like to add to the record from last week's

9   proceeding?

10          MS. KARLEN:  May I have one moment?

11      (Discussion held off the record)

12          MS. KARLEN:  Your Honor, we stand on the proffer from

13  last week.

14          THE COURT:  Thank you.

15          Mr. Morrissey, is there anything you'd like to add or

16  argue?

17          MR. MORRISSEY:  Yes, Your Honor.

18          First, Your Honor, I would like to propose that

19  Miss Dubrow does remain a valid third-party custodian.  As the

20  Court indicated, the residence appears suitable for location

21  monitoring.  The difficulty identified by Pretrial Services

22  does not refer to Miss Dubrow, but to somebody who was formerly

23  residing in her house and is not currently there.  I don't

24  believe that's a valid criterion then to say that the

25  environment is not appropriate for third-party custody.

1       As to the other individuals residing in the house now,

2   which include Miss Dubrow's son, there is a bit of a dispute

3   with the Government.  The Government, I believe, thinks that

4   somebody is out on bond.  I don't think that's accurate.  I

5   think there is a case that could be filed, but there are no

6   pending charges.

7       Which means there appears to be no bar to

8   Mr. El Gammal residing there.  And I would respectfully ask the

9   Court to not follow the conclusion that Miss Dubrow's residence

10  is inappropriate for third party custody.

11      In the event the Court does not agree or -- with my

12  argument and goes with the Pretrial Services' report, I would

13  ask for leave to propose another third-party custodian, if an

14  appropriate one can be identified.

15      Regarding the substance of the Government's proffer, I

16  would note that the Facebook posts provided to the Court relate

17  as far back as 2013.  They also go as far back as a year ago.

18  And at best the inferences to be drawn from them are that

19  Mr. El Gammal had strong feelings about the situation in Egypt,

20  which has no bearing on the basis for detaining him for these

21  charges, which refer to whether or not he gave support or

22  advice to an individual traveling from Turkey to Syria.

23      There is not a shred of evidence in the Government's

24  proffer that indicates that Mr. El Gammal knew that the

25  individual was anywhere other than Turkey.  And that's not a

15-8378MJ – September 1, 2015

1  crime.

2          So I do not believe that the proffer or any argument

3  made by the Government supports the argument that danger has

4  been proven by up to a clear and convincing standard.

5          Clearly there is political talk in the proffer, but

6  that is not illegal.  And there is no discussion in the proffer

7  that would link Mr. El Gammal with these charges in a manner of

8  supporting danger.

9          And they do at one point discuss whether Mr. El Gammal

10  might himself travel to Turkey, which is also not illegal.  And

11  that is why the defense exhibit rebuts that.  It's quite clear

12  from the defense exhibit that he had no present plans to leave

13  Arizona, that he had already paid a deposit and had a new

14  residence that he was moving to.

15          And I would also note that if he is released, he could

16  complete that transaction, and he is -- would have a place to

17  live.

18          So for all those reasons, I would ask that the Court

19  allow release of Mr. El Gammal.

20          THE COURT:  Thank you, Mr. Morrissey.

21          MR. PIMSNER:  Your Honor, if I may address only the

22  Watkins residence.  If the Court is interested in -- is

23  inclined to release him to the Watkins residence, I'd have some

24  additional information I can rebut for the record.

25          THE COURT:  About Miss Dubrow's residence?

1          MR. PIMSNER:  Yes.

2          THE COURT:  Please go --

3          MR. PIMSNER:  Leading up to May 20th, Christian

4    Dubrow, who is currently in Maricopa County Jail, he's been

5    found guilty of dealing marijuana out of that residence.  He

6    did at least three hand-to-hand marijuana sales from that

7    residence.

8          The police did a search warrant at that house on May

9    20th of 2015.  They found numerous quantities of marijuana and

10   drug paraphernalia.  At least three, possibly four handguns,

11   including a sawed-off shotgun.  There were marijuana plants

12   growing in the back yard.  There was marijuana in multiple

13   rooms.

14          And we believe -- and then Robert Dubrow who currently

15   lives there, was arrested.  He was originally released on bond.

16   That bond may have been exonerated.  But it's our belief he has

17   charges pending from the May 20th, 2015 search warrant.

18          So we don't believe that's an appropriate location for

19   Pretrial to have to monitor Mr. El Gammal.

20          And lastly, it's our understanding through further

21   investigation by the FBI that Miss Dubrow is not

22   Mr. El Gammal's former or ex-mother-in-law, she is the former

23   mother-in-law of Mr. El Gammal's ex-wife, who -- from a

24   previous marriage.  So that relationship is attenuated.

25          THE COURT:  Miss Karlen, Mr. Pimsner, I'm going to ask

15-8378MJ – September 1, 2015

1   one or the other of you to speak, it's not really fair to have

2   you both speak.

3        Mr. Morrissey, was there anything else that you would

4   like to add?

5        MR. MORRISSEY:  Only that the statement that charges

6   are pending sounds like there's a present intent to bring

7   charges against the son.  I would proffer that the reality is,

8   no one has made that commitment.  They did the search warrant.

9   There's a statute of limitations.  The State has a certain

10  amount of time with which to bring that.  They still haven't

11  declined the case, but there is no case.

12        And, therefore, I don't believe that the statements

13  about the environment hold up in any way in terms of it being

14  an inappropriate environment.

15        THE COURT:  All right.  Thank you, Mr. Morrissey.

16        Thank you, Mr. Pimsner, Miss Karlen.

17        Counsel agreed at the initiation of this hearing last

18  week that this is a case in which the presumption applies.

19  That means this is a case in which the statutory presumption

20  that the defendant poses a risk of flight and a danger to the

21  community applies.  That is a rebuttable presumption.

22        Mr. Morrissey has previously argued that that

23  presumption can be rebutted by Mr. El Gammal's long residence

24  in the Phoenix community.  He has resided here for

25  approximately ten years.  And also by his history of employment

UNITED STATES DISTRICT COURT

1    where he's been self-employed in a business for approximately

2    ten years.  And he proffered information last week that he

3    conducts his business from a warehouse that he leases here in

4    Phoenix.

5            The information presented at the conclusion of the

6    hearing last week was that Mr. El Gammal was changing his

7    residence.  The residence at which he has been living was no

8    longer going to be his residence, and so instead of

9    investigating whether that residence would be appropriate as a

10   possible place for him to reside for GPS location monitoring

11   and for a third-party custodian, defense requests and the Court

12   directed Pretrial Services to instead investigate a different

13   residence, that of Miss Dubrow.

14           This is the second investigation that Pretrial

15   Services conducted to determine if there was an appropriate

16   third-party custodian.  The first proposed custodian was found

17   not to be suitable.

18           At Mr. Morrissey's request Pretrial Services

19   considered Miss Dubrow, and Pretrial Services has concluded

20   that her residence is not an appropriate location at which to

21   provide supervision and for Mr. El Gammal to reside because of

22   criminal activity at the residence.

23           The Pretrial Services' report indicates the sale of

24   marijuana to an undercover officer by a family member of

25   Miss Dubrow at that residence.  There's also some indication

1    that that family member could return to reside at that

2    residence.

3         Although Mr. El Gammal has factors that weigh in favor

4    of release, including that he is a naturalized citizen, that he

5    has resided in this area for some time, and that he has stable

6    employment, and that his criminal history is minimal —— it

7    appears primarily related to some driving offenses and some

8    issues that could be related to domestic disputes that are

9    quite dated from 1998 and 1999.  So he doesn't have a current

10   or continuing criminal history.

11        Balanced against that are other factors in the

12   detention statute, which specifically include the charges

13   against the defendant, and list that the Court should consider

14   whether one of the charges is a federal crime of terrorism.

15   The charges against this defendant are very serious.  So

16   serious, in fact, that they are sufficient for the statutory

17   presumption of detention of flight and danger to apply.

18        Although the information about his history and

19   characteristics weighs in his favor, that also cuts against him

20   in that he has dual citizenship, strong family ties in Egypt,

21   friends in Turkey.  And the Government has presented in the

22   exhibits e-mails and Facebook posts to substantiate their

23   proffer from last week that he has communicated with what

24   appears to be a family member in Egypt about sending large sums

25   of money there.  The Pretrial Services' report indicates he has

11

1    approximately $90,000 in his bank account.

2         Also that he's communicated with the U.S. citizen who

3    has left the United States and is basically the factual

4    predicate for the offenses now pending against Mr. El Gammal.

5         And the communications lead the Court to conclude that

6    the discussion relates to Mr. El Gammal leaving the country and

7    moving to where that other individual's residing, which from

8    the evidence presented is now in Syria.

9         The communication's coded, but not particularly

10   difficult coding.  It refers to a job in a parking lot.  That's

11   language that this individual used in other messages.  It

12   appears fairly obvious from reading the communications that the

13   discussion is about leaving the United States and going to the

14   Middle East, at least to Turkey and perhaps into Syria.

15        The other concern is that this is a Rule 5 proceeding.

16   The defendant is facing charges out of an Indictment from the

17   Southern District of New York.  That means if he were released

18   here he'd be on courtesy supervision in this District, but he

19   would be required to travel to the Southern District of

20   New York for court appearances, to meet with his attorney,

21   perhaps for some other reasons.  That travel is a significant

22   distance across the United States, either by a vehicle or an

23   airplane.  Even on GPS monitoring, because he would be

24   authorized to travel at various points, it would be extremely

25   difficult if not impossible for Pretrial Services to really

15-8378MJ – September 1, 2015

1   keep track of him, even with GPS monitoring, to make sure that

2   he wouldn't flee.

3          He has the resources to flee.  He has contacts in

4   another country to where he could flee.  And he has every

5   incentive to flee.  He's facing very significant charges with a

6   maximum sentence of ten years.

7          So the Court finds for all these reasons that he has

8   not rebutted the presumption of flight.  And also based on the

9   nature of the charges and the discussions in the e-mails and

10  the Facebook texts, that the Government has proposed that he

11  also poses a danger to the community.

12          Although there was information about him belonging

13  to -- defendant offered that he belongs to a shooting club to

14  explain the ammunition in his home, and an argument that owning

15  a drone plane is innocuous, there's also discussion in the

16  e-mails about using that plane to load bombs on it, and that it

17  could be dropped on Gaza.

18          All of this information suggests a mindset that poses

19  a very significant and serious danger to the community and to

20  others.

21          So for these reasons I'm going to order that he be

22  detained and transported to the Southern District of New York.

23          Counsel, is there anything else that we need to

24  address this morning?

25          MR. PIMSNER:  Yes, Your Honor.

1           May I have one moment with counsel?

2           THE COURT:  Certainly.

3      (Discussion held off the record.)

4           MR. PIMSNER:  Your Honor, we do have one request, that

5  the exhibits that we filed as part of this hearing, or

6  proffered for this hearing, that they be kept under seal for

7  reasons that if I may approach.

8           THE COURT:  Certainly.

9           MR. PIMSNER:  I have a motion.

10           THE COURT:  Thank you, Mr. Pimsner.

11           MR. MORRISSEY:  Your Honor, the defense has no

12  objection to the motion to seal.

13           THE COURT:  All right.  The exhibits will be filed and

14  maintained under seal.

15           Is there anything else that we need to address this

16  morning?

17           MR. PIMSNER:  No, Your Honor.  Thank you.

18           THE COURT:  All right.  Thank you then.

19           The hearing is adjourned.

20

21                          -oOo-

22

23

24

25

1

2

3

4                    C E R T I F I C A T E

5

6         I, CANDY L. POTTER, court-approved transcriber,

7    certify that the foregoing is a correct transcript from the

8    official electronic sound recording of the proceedings in the

9    above-entitled matter.

10

11        DATED at Phoenix, Arizona, this 18th day of

12   September, 2015.

13

14

15

16                              s/Candy L. Potter__
17                              Candy L. Potter

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT